**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARC WEINSTEIN and ) | |
| H. THOMAS FERGUSON, both ) | |
| Individually and on behalf of other ) | |
| Similarly situated, ) | |
| ) | |
| Plaintiffs ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | |
| LENFEST MEDIA GROUP, LLC ) | |
| ) | |
| Defendant ) | |
| ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Marc Weinstein and H. Thomas Ferguson ("plaintiffs"), by and through their attorneys, bring this action on behalf of themselves, all others similarly situated, and the general public against defendant Lenfest Media Group LLC ("Lenfest" or "defendant"). Plaintiffs allege, upon information and belief, except for information based of personal knowledge, as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(d) (2), under the provisions of the Class Action Fairness Act ("CAFA").  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some of the members of the class of plaintiffs are citizens of states different from defendant.  Further, greater than two-thirds of the class members reside in states other than the state in which defendant is a citizen.

2.      Venue is proper pursuant to 28 U.S.C.§1391(a) because Lenfest is headquartered in this District and its principal offices and marketing department are located in this District and because the Court has personal jurisdiction over Defendant.  No other forum would be more convenient for the parties and witnesses to litigate this action.

## NATURE OF THE ACTION

3.      This is a consumer rights class action lawsuit.  Defendant manufactures, markets, distributes and sells a product called the WAXVAC® Ear Cleaner ("WAXVAC®").  Defendant, through an extensive and comprehensive nationwide marketing campaign, claims that the WAXVAC® "is the safe way to clear your ears" and that the product "gently draws dirt particles and moisture out quickly and safely."

4.      However, despite defendant's claims that the WAXVAC® "gently draws dirt particles and moisture out quickly and safely", the product does not remove dirt particles and moisture as promised.  As such, defendant's representations are false, misleading, and reasonably likely to deceive the public.

5.      Defendant's nationwide advertising campaign has been extensive and comprehensive, spending hundreds of thousands – if not millions – of dollars to convey deceptive messages about the effectiveness of its product throughout the United States.  Defendant conveyed and continues to convey its deceptive claims about WAXVAC® through a variety of media, including point of sale displays, television, newspaper, magazine, the Internet and on the product's packaging.  The only reason a consumer would purchase a WAXVAC® would be to obtain the advertised benefits.

6.      Defendant's nationwide marketing campaign and misleading claims has caught the eye of the United States Food and Drug Administration ("FDA") who, on July 1,

2013, sent defendant a Warning Letter (hereinafter, the "FDA Warning Letter").  The FDA Warning Letter states that defendant's promotion of WAXVAC® "contains claims for which [defendant] lacks clearance or approval" and specifically references defendant's claims that the WAXVAC® "gently draws dirt particles and moisture out of your ear quickly and effectively."

7.      Despite the FDA's admonishment that defendant "immediately cease activities that result in the misbranding or adulteration of the WAXVAC®", the same claims still appear in defendant's marketing campaign.  Moreover, as of Sunday, February 23, 2014, defendant was still running television commercials in an effort to promote the WAXVAC®.

8.      Plaintiffs bring this action on behalf of themselves, and all other similarly situated consumers who purchased the WAXVAC® in the United States in order to halt the dissemination of false and misleading advertisement messages, correct the false and misleading perception that defendant created in the minds of consumers, and to obtain redress for those who have purchased the WAXVAC®.  Plaintiff alleges violations of laws prohibiting unfair and deceptive trade practices of the states and territories wherein Class members reside, specifically Pennsylvania, 73 Pa. Stat. Section 201-1 et seq. and New Jersey Rev. Stat. Section 56:8-1 and breaches of express and implied warranties created by defendant's marketing campaign, including its advertising and packaging.

## PARTIES

9.      At all times relevant to this matter, plaintiff Marc Weinstein resided and continues to reside in this District.  Plaintiff H. Thomas Ferguson lives in Gloucester County New Jersey.  During the relevant time period, plaintiffs were exposed to and saw WAXVAC® advertising claims disseminated by defendant, purchased the WAXVAC® in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition described herein, including purchasing a product that is of little to no value.

10.      Defendant Lenfest Media Group LLC, upon information and belief, is incorporated in the Commonwealth of Pennsylvania and is headquartered in King of Prussia, Montgomery County Pennsylvania.  Lenfest is registered to do business in the Commonwealth of Pennsylvania, and does business in the Commonwealth of Pennsylvania.  Lenfest's corporate headquarters is located at 500 North Gulph Road, Suite 401, King of Prussia, Pennsylvania 19406.  Lenfest describes itself as "a leading direct response television marketer with successful retail brands" that "works at lightening speeds to launch consumer products into retail with direct response television marketing."  *See* http://www.lenfestmedia.com.  Lenfest proudly exclaims that "from concept, product development, market research, manufacturing, production, media buying, fulfillment and through retail distribution we do it ALL and we do it FAST!" *Id.* (emphasis in original).  Lenfest created the false and deceptive advertising campaign at issue, and promotes, markets distributes, and sells WAXVAC® to thousands of customers throughout the United States.

## FACTUAL ALLEGATIONS

11.      Medical professionals have, for years, warned of the dangers of inserting cotton buds (or, as they are more popularly referred to – "Q-Tips") into the ear for the purpose of cleaning out ear wax and/or drying liquid in the ear after swimming or taking a shower or bath.   Indeed, there is even a warning contained on "Q-Tips" cautioning against putting the cotton swab into the ear canal and providing safe instructions for use. Seeking to capitalize on those warnings, defendant offered to consumers the purported "safe and effective way to clean and dry your ears" – the WAXVAC®

12.      The WAXVAC®, pictured below, allegedly works by "gently draw[ing] dirt particles and moisture out of your ear rather than pushing it in." *See* *http://www.youtube.com/watch?v=Htbo1yW6qeU*.   The device uses a vacuum-like suctioning effect to remove water, dirt, and moisture from the consumer's ears.   Any moisture or dirt removed from the ear collects in the receptacle at the end of the silicone tip that is inserted into the ear, which the users are to empty out after each use.



13.     For the low cost of just $10.00 (plus processing and handling, naturally), the unwitting consumer gets not one, but two WAXVAC® Ear Cleaning devices, 16 color-coded silicone tips (color coded for each family member) and two cleaning brushes.

14.     On WAXVAC® packaging and in its other advertisements, defendant claimed and continues to claim that the WAXVAC® "is the safe and effective way to clean and dry your ears" and that the product "gently draws dirt particles and moisture out quickly and safely."

15.     Unfortunately for the thousands, if not millions, of consumers that have purchased the WAXVAC®, the product does not work as promised.

16.     Throughout the claim period, defendant marketed the WAXVAC® using similar and deceptive advertising and packaging.

17.     On the product website, https://www.waxvac.com, in at least nine places on the main page alone, defendant claims that the WAXVAC® gently draws dirt particles and moisture out of consumers' ears quickly and safely.  This promise is repeated in the television ad that can be viewed at http://www.youtube.com as well as on its packaging, pictured below:



18.     Defendant's unsubstantiated claims have caught the eye of the FDA. On July 1, 2013, the FDA sent a Warning Letter to defendant stating:

> The United States Food and Drug Administration (FDA) has learned that your firm is marketing the WaxVac device in the United States (U.S.) without marketing clearance or approval, in violation of the Federal Food, Drug, and Cosmetic Act (the Act).
>
> Under section 201(h) of the Act, 21 U.S.C. § 321(h), this product is a device because it is intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or to affect the structure or function of the body.
>
> ***The FDA has reviewed your firm's internet web site at: https://www.waxvac.com/ for the WaxVac device. Your firm's promotion of the WaxVac contains claims for which your firm lacks clearance or approval. Examples include: "Gently draws dirt particles and moisture out of your ear quickly and safely".***
>
> The WaxVac is adulterated under section 501(f) (1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B), because your firm does not have an approved application for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or an approved application for an investigational device exemption under section 520(g) of the Act, 21 U.S.C. § 360j(g).
>
> For a device requiring premarket approval, the notification required by section 510(k) of the Act, 21 U.S.C. 360(k), is deemed satisfied when a PMA is pending before the agency. 21 C.F.R. 807.81(b). The kind of information that your firm needs to submit in order to obtain approval or clearance for the device is described on the Internet at http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/HowtoMarketYourDevice/default.htm. The FDA will evaluate the information that your firm submits and decide whether the product may be legally marketed.
>
> ***Our office requests that Lenfest Media Group, LLC. immediately cease activities that result in the misbranding or adulteration of the WaxVac, such as the commercial distribution of the device for the uses discussed above.***
>
> Your firm should take prompt action to correct the violations addressed in this letter. Failure to promptly correct these violations may result in regulatory action being initiated by the FDA without further notice. These actions include, but are not limited to, seizure, injunction, and civil money penalties. Also, federal agencies may be advised of the issuance of Warning Letters about devices so that they may take this information into account when considering the award of contracts.

Please notify this office in writing within fifteen business days from the date you receive this letter of the specific steps your firm has taken to correct the noted violations, as well as an explanation of how your firm plans to prevent these violations, or similar violations, from occurring again. Include documentation of the corrections and/or corrective actions (including any systemic corrective actions) that your firm has taken. If your firm's planned corrections and/or corrective actions will occur over time, please include a timetable for implementation of those activities. If corrections and/or corrective actions cannot be completed within fifteen business days, state the reason for the delay and the time within which these activities will be completed. Your firm's response should be comprehensive and address all violations included in this Warning Letter.

* * * * * * * * * * *

Finally, you should know that this letter is not intended to be an all-inclusive list of the violations at your firm. It is your firm's responsibility to ensure compliance with the applicable laws and regulations administered by FDA.

*See* http://www.fda.gov/iceci/enforcementactions/warningletters/2013/ucm359633.htm. (Emphasis added.)

19.    Despite the FDA's admonishment that defendant "immediately cease activities that result in the misbranding or adulteration of the WAXVAC®", the same claims still appear in defendant's marketing campaign today.

**CLASS ACTION ALLEGATIONS**

20.    Plaintiffs bring this action on behalf of themselves and members of a Class defined as:

> All persons who purchased the WAXVAC® Ear Cleaner in the United States.  Excluded from the Class are defendant and its officers, directors and employees and those who purchased the WAXVAC® Ear cleaner for the purpose of resale.

21.    ***Numerosity.***  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains thousands if not tens of thousands of members.  The precise

number of Class members is unknown to plaintiff. The true number of Class members is known by the defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and/or published notice.

22. ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

a.    Whether defendant had adequate proof to substantiate its claims prior to making them;

b.    Whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

c.    Whether defendant's alleged conduct violates public policy;

d.    Whether the alleged conduct constitutes violations of the laws asserted;

e.    Whether defendant engaged in false or misleading advertising;

f.    Whether plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

g.    Whether plaintiffs and Class members are entitled to an award of punitive damages; and

h.    Whether plaintiffs and Class members are entitled to declaratory and injunctive relief.

*23.* ***Typicality.*** Plaintiffs' claims are typical of the claims of the members of the Class in that the defendant was unjustly enriched as a result of plaintiffs' and the Class' respective purchases of the WAXVAC®.

*24.    **Adequacy of representation.***    Plaintiffs will fairly and adequately protect the interests of the members of the Class.    Plaintiffs have retained counsel experienced in complex class litigation, and plaintiff intends to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

25.    **Superiority.**    A class action is superior to all other available means for the fair and efficient adjudication of this controversy.    The damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the defendant.    It would be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.    Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.    Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.    By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

26.    In the alternative, the Class may also be certified because:

    a.        The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incomplete standards of conduct for the defendant; and/or

b.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

27.  Unless a Class is certified, defendant will retain monies received as a result of its conduct that was taken from plaintiff and Class members.  Unless a Class-wide injunction is issued, defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

**COUNT I**

**Unjust Enrichment**

28.    Plaintiffs incorporate by reference to preceding paragraphs as if fully set forth herein.

29.    This Count I is asserted on behalf of the nationwide Class under Pennsylvania law and New Jersey law.

30.    "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensation to the Plaintiffs and Class Members.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.,*

257 F.R.D. 46,58 (D.N.J. Apr. 24, 2009), *quoting Powers v. Lycoming Engines* 245 F.R.D. 226, 231 (E.D. Pa. 2007).

31.     "Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn," *In re Mercedes-Benz Tele Aid Contract Litig.* 257 F.R.D. at 58, New Jersey law applies to those claims.

32.     Plaintiffs and Class members conferred a benefit on Lenfest by purchasing the WAXVAC®.

33.     Lenfest has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of the WAXVAC®, which retention under those circumstances is unjust and inequitable because Lenfest misrepresented that the WAXVAC® product is able to draw dirt particles and moisture out of the user's ears, which caused injuries to Plaintiff and Class members because (a) they would not have purchased the WAXVAC® on the same terms if the true facts concerning the product's ability to clean ears; (b) they paid a price premium due to the misleading claims about the product; and (c) the WAXVAC® did not perform as promised.

34.     Because Lenfest's retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Lenfest must pay restitution to Plaintiffs and Class members for its unjust enrichment, as ordered by the Court.

**COUNT II**

**Violation of the State Consumers Protection Laws**

35.     Plaintiffs incorporate by reference to preceding paragraphs as if fully set forth herein.

36.     Plaintiffs and Class members allege that Defendant violated the substantive consumer protection and unfair deceptive trade practice acts or statutes of all 50 states and United States territories where their consumers reside.

37.     By reason of the conduct as alleged herein, by manufacturing, advertising and marketing the WAXVAC®, Defendant misled consumers about the efficacy of the product.  Defendant intentionally engaged in these deceptive acts and made false or misleading representations, causing harm to the Plaintiffs and Class Members damages.

38.     Defendant violated the laws prohibiting unfair and deceptive trade practices of the states and territories wherein Class members reside: Alaska Stat.  §44-1522 et seq.; Ariz. Rev. Stat § 44-1522 et seq.; Ark. Code §4-88-202 et seq.; Cal. Bus. & Prof. Code §17200 et seq.; Col. Rev. Stat. §6-1-105 et seq.; Conn. Gen. Stat. §42-110b et seq.; 6 Del. Code §2511 et seq.; D.C. Code §28-3901 et seq.; Fla. Stat. §501-201 et seq.; Ga. Code Ann. §10-1-392 et seq.; Haw. Rev. Stat. §480 et seq.; Idaho Code §48-601 et seq.; Kan. Stat. §50-623 et seq.; Ky. Rev. Stat. §367.110 et seq.; La. Rev. Stat. §51:1401 et seq.; Mass. Gen. Laws ch. 93A et seq.; Md. Com. Law Code §13-101 et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §8.31 et seq.; Vernon's Missouri Stat. §407.010 et seq.; Mont. Code §30-14-101 et seq.; Neb. Rev. Stat §59-1601 et seq.; Nev. Rev. Stat. §598.0903 et seq.; N.H. Rev. Stat. §358-A-1 et seq.; N.J. Rev. Stat. §56:8-1 et seq.; N.M. Stat. §57-12-1 et seq.; N.Y. Gen. Bus. Law §349 et seq.; N.C. Gen. Stat. §75-11 .1 et. seq.; N.D. Cent.

Code §51-15-01 et seq.; Ohio Rev. Stat. §1345.01 et seq.; Ok. Stat. 15 §751 et seq.; Or. Rev. Stat. §646.605 et seq.; 73 Pa. Stat §201-1 et seq.; R.I. Gen. Laws §6-13.101 et seq.; S.C. Code Laws §39-5-10 et seq.; S.D. Code Laws §37-24-1 et seq.; Tenn Code §7-18-101 et seq.; Tex. Bus. & Com. Code §17.41 et seq.; Utah Code §13-11-1 et seq.; 9 Vt. §2451 et seq.; Va. Code §59.1-196 et seq.; Wash. Rev. Code §19.86.010 et seq.; West Virginia Code §46A-6-101 et seq.

39.     As a direct and proximate result of Lenfest's statutory violations, Plaintiffs and Class members have been injured and suffered damages, including, but not limited to all monies paid for the Products.

40.     By reason of Defendant's violations, Plaintiffs and the Class members are entitled to recover treble damages where available, including, but not limited to, all monies expended to purchase Lenfest products.

## COUNT III

### Violation of Magnuson-Moss Act (15 U.S.C. §2301 et seq.)

41.     Plaintiffs incorporate by reference to preceding paragraphs as if fully set forth herein.

42.     Defendant is a supplier and warrantor as defined in 15 US.C. §2301 (4)(5).

43.     The WAXVAC® is a consumer product as defined in 15 US. §2301 (6).

44.     By reason of Defendant's breach of its implied warranties and express written warranties stating that the WAXVAC® would operate properly, were free from material defects, Defendant has violated the statutory rights due the Plaintiffs and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 US.C§2301, et seq.

## COUNT IV

## Breach of Express Warranty

45.     Plaintiffs incorporate by reference to preceding paragraphs as if fully set forth herein.

46.     Lenfest, as the manufacturer, marketer, distributor, or seller expressly warranted that the WAXVAC® was fit for the purpose of cleaning wax out of ears.

47.     Lenfest's affirmations of fact and/or promises relating to the WAXVAC® created express warranties that the products purchased by Plaintiffs and the Class would operate properly without defects.  Lenfest breached the express warranty in that the WAXVAC® did not conform to the promises or affirmations of fact made by Lenfest to the Plaintiffs and members of the Class.

48.     Alternatively, Lenfest's descriptions of the WAXVAC® became part of the basis of the bargains between consumers and Lenfest, creating express warranties that the product purchased by Plaintiffs and the Class would conform to Lenfest's representations.

49.     At all times, California and the following 48 states, including the District of Columbia, have codified and adopted the provisions the Uniform Commercial Code governing the express warranty of merchantability: Ala. Code 1975 § 7-2-313; Alaska Stat. §45.02.313; Ariz. Rev. Stat. §47-2313; Ark. Code Ann. §4-2-313; Cal. Com. Code §2313; Colo. Rev. Stat. Ann. §4-2-313; Conn. Gen. Stat. §42a-313; Del. Code Ann. Tit. 6 §2-313; D.C. Code §28:2-313; Fla. Sta. Ann. §672-313; Ga. Code Ann. §11-2-313; Haw. Rev. Stat. §490:2-313; Idaho Code Ann. §28-2-313; 810 Ill. Comp. Stat. 5/2-313; Ind. Code. Ann. §26-1-2-313; Iowa Code Ann. §554.2313; Kansas Stat. Ann. §84-2-313; Ky.

Rev. Stat. Ann. §355.2.313; Me. Rev. Stat. Ann. Tit. 11; §2-213; Md. Com. Law Code Ann. §2-313; Mass. Gen. Laws ch. 106 §2-313; Mich. Comp. Laws Ann. §440-2313; Minn. Stat. Ann. §336.2-313; Miss. Code. Ann. §75-2-313; Mo. Rev. Stat. §400.2-313; Mont. Code. Ann. §30-2-313; Nev. Rev. Stat. Ann. §104.2313; N.H. Rev. Stat. Ann. §382-A:2-313; N.J. Stat. Ann. §12A:2-313; N.M. Stat. Ann. §55-2-313; N.Y. U.C.C. Law §2-313; N.C. Gen. Stat. Ann. §25-2-313; N.D. Cent. Code §41-02-30; Ohio Rev. Code Ann. §1302.26; Okla. Stat. Ann. Tit. 12A, §2-313; Or. Rev. Stat. §72.3130; Pa. Stat. Ann. §2313; R.I. Gen. Laws §6A-2-313; S.C. Code Ann. §36-2-313; S.D. Codified Laws §57A-2-313; Tenn. Code Ann. §47-2-313; Tex. Bus. & Com. Code Ann. §2.313; Utah Code Ann. §70A-2-313; Va. Code Ann. §8.2-313; Vt. Stat. Ann. Tit. 9A, §2-313; Wash. Rev. Code. Ann. §62A.2-313; W. Va. Code Ann. §46-2-313; Wis. Stat. Ann. §402.313; and Wyo. Stat. Ann. §34.1-2-313.

50.    Lenfest is in privity with Plaintiffs and Class members by selling directly to members of the public, and by warranting the WAXVAC®.  Further, Lenfest knew the identity, purpose and requirements of Plaintiffs and the Class and manufactured the WAXVAC® to meet their requirements.

51.    As a result of the foregoing, Plaintiffs and Class members have suffered damages.

## COUNT V

### Breach of Implied Warranty of Merchantability

52.    Plaintiffs incorporate by reference to preceding paragraphs as if fully set forth herein.

53.    This Count V is brought on behalf of the nationwide Class under both Pennsylvania law and New Jersey law.

54.    Defendant, as the manufacturer, marketers, distributors, and/or sellers impliedly warranted that the WAXVAC® was fit for its intended purpose in that it would function properly as a product which would suck wax out of its user's ears.

55.    Defendants breached the warranty implied in the contract for the sale of the WAXVAC® in that the product could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose in that they did not function properly.  Furthermore, the WAXVAC® did not conform to the promises or affirmations of fact made on the container and label.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Lenfest to be merchantable.

56.    In reliance upon Lenfest's skill and judgment and the implied warranties of fitness for the purpose, Plaintiff and Class members purchased the WAXVAC® for its intended use to clean ears.

57.    The WAXVAC® was not altered by Plaintiff and Class members.  The WAXVAC® was defective when it left the exclusive control of Defendants and Defendants knew the WAXVAC® would be purchased and used without additional testing by Plaintiff and Class members.  The WAXVAC® product was defectively

designed and was unfit for their intended purpose and Plaintiff and Class members did not receive the goods as warranted.

58.     At all times, California and the following 48 states, including the District of Columbia, have codified and adopted the provisions the Uniform Commercial Code governing the express warranty of merchantability: Ala. Code 1975 § 7-2-313; Alaska Stat. §45.02.313; Ariz. Rev. Stat. §47-2313; Ark. Code Ann. §4-2-313; Cal. Com. Code §2313; Colo. Rev. Stat. Ann. §4-2-313; Conn. Gen. Stat. §42a-313; Del. Code Ann. Tit. 6 §2-313; D.C. Code §28:2-313; Fla. Sta. Ann. §672-313; Ga. Code Ann. §11-2-313; Haw. Rev. Stat. §490:2-313; Idaho Code Ann. §28-2-313; 810 Ill. Comp. Stat. 5/2-313; Ind. Code. Ann. §26-1-2-313; Iowa Code Ann. §554.2313; Kansas Stat. Ann. §84-2-313; Ky. Rev. Stat. Ann. §355.2.313; Me. Rev. Stat. Ann. Tit. 11; §2-213; Md. Com. Law Code Ann. §2-313; Mass. Gen. Laws ch. 106 §2-313; Mich. Comp. Laws Ann. §440-2313; Minn. Stat. Ann. §336.2-313; Miss. Code. Ann. §75-2-313; Mo. Rev. Stat. §400.2-313; Mont. Code. Ann. §30-2-313; Nev. Rev. Stat. Ann. §104.2313; N.H. Rev. Stat. Ann. §382-A:2-313; N.J. Stat. Ann. §12A:2-313; N.M. Stat. Ann. §55-2-313; N.Y. U.C.C. Law §2-313; N.C. Gen. Stat. Ann. §25-2-313; N.D. Cent. Code §41-02-30; Ohio Rev. Code Ann. §1302.26; Okla. Stat. Ann. Tit. 12A, §2-313; Or. Rev. Stat. §72.3130; Pa. Stat. Ann. §2313; R.I. Gen. Laws §6A-2-313; S.C. Code Ann. §36-2-313; S.D. Codified Laws §57A-2-313; Tenn. Code Ann. §47-2-313; Tex. Bus. & Com. Code Ann. §2.313; Utah Code Ann. §70A-2-313; Va. Code Ann. §8.2-313; Vt. Stat. Ann. Tit. 9A, §2-313; Wash. Rev. Code. Ann. §62A.2-313; W. Va. Code Ann. §46-2-313; Wis. Stat. Ann. §402.313; and Wyo. Stat. Ann. §34.1-2-313.

59.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the WAXVAC® on the same terms if the true facts concerning the product had been known; (b) they paid a price premium due to the mislabeling of the WAXVAC® product; and (c) the WAXVAC® did not perform as promised.

## COUNT VI

### Equitable Relief

60.    Plaintiffs incorporate by reference to preceding paragraphs as if fully set forth herein.

61.    Absent Defendant providing a product that works, the WAXVAC® will continue to fail and Class members will be harmed.

62.    Defendant knew and knows that the acts and practices complained of herein are materially deceptive and misleading and pose certain problems, namely the WAXVAC® not working properly.

63.    Because of Defendant's prior conduct, there is every reason to believe that if the conduct complained of herein is not enjoined, Defendant will continue to sell the WAXVAC® which does not work.

64.    Plaintiffs request that the Court Order that Lenfest stop selling the WAXVAC®.

65.    Plaintiffs request that Lenfest take such other affirmative action as necessary to affect a just resolution of this action.

## COUNT VII

### Breach of Duty of Good Faith and Fair Dealing

66.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

67.    Each sale entered into by Plaintiffs and Class members for the WAXVAC® contains an implied term requiring Lenfest to adhere to a duty of good faith and fair dealing.

68.    Defendant has breached their duty of good faith and fair dealing by, among other things, failing to provide a product that works.

69.    Defendant's breach of its implied duty of good faith and fair dealing is intentional, malicious, and with willful and wanton disregard of the rights and interests of the Plaintiffs and members of the Class.

70.    As a direct and proximate result of Lenfest's breach of implied duty of good faith and fair dealing, Plaintiffs and Class members have suffered damages including, but not limited to, the WAXVAC® not working and other damages in an amount to be determined at trial.

### REQUEST FOR PROPER RELIEF

Plaintiffs, Marc Weinstein and H. Thomas Ferguson, individually and on behalf of those similarly situated, requests the following relief:

A.    For an Order Certifying that this Action may be maintained as a class action against the Defendant, appointing Plaintiffs and their counsel to represent the class and directing that reasonable notice be given by the Defendant to the Class.

B.      For a declaration that Lenfest's WAXVAC® was negligently designed and/or manufactured;

C.      Compensatory damages;

D.      For Equitable Relief as set forth above.

E.      Equitable restitution;

F.      Interest;

G.      Attorneys' fees and costs; and,

H.      Such other relief to which Plaintiffs may show the Class members entitled.


JURY TRIAL DEMANDED

ATTORNEYS' LIEN CLAIMED


DATED: February 27, 2014                    Respectfully Submitted,


                                            /s/ BMF1980_____

                                            Brian M. Felgoise, Esq.
                                            Amir Stark, Esq.
                                            Felgoise Law Firm
                                            261 Old York Road – Suite 518
                                            Jenkintown, PA  19046
                                            215-886-1900
                                            215-886-1909 (Facsimile)
                                            felgoiselaw@verizon.net

                                            Marc S. Henzel, Esq.,
                                            Law Offices of Marc Henzel
                                            431 Montgomery Ave., Suite B
                                            Merion Station, PA 19066
                                            Telephone: (610) 660-8000
                                            Facsimile: (610) 660-8080
                                            mhenzel@henzellaw.com